## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| American Civil Liberties Union, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Bureau of Investigation, *et al.*,<br><br>Defendants. | No. 11 Civ. 5963 (PGG)<br><br>ECF Case |

### <u>AMENDED COMPLAINT FOR INJUNCTIVE RELIEF</u>

1.      In this Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") case, the American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively "ACLU") challenge the government's failure to promptly release documents relating to the scope and implementation of the Federal Bureau of Investigation's eGuardian monitoring and information-sharing system.  Although the use of this nationwide so-called "suspicious activity" reporting and information-sharing program has been the subject of widespread public attention, concern, and debate, the details of eGuardian's implementation have been shrouded in secrecy.

2.      Through the eGuardian system, the FBI collects "Suspicious Activity Reports" or "SARs" from local, state, and federal law enforcement and intelligence agencies to track and share information about potential terrorism threats nationwide.  The FBI employs a broad and vague definition of "suspicious activity," which encompasses activity as innocuous as photographing prominent buildings.  This system of tracking, analyzing, and widely disseminating Americans' "suspicious activity" raises grave privacy concerns and may

encourage illegal and inappropriate profiling on the basis of race, ethnicity, national origin, religion and/or protected beliefs and activities.

3.      On March 1, 2010, Plaintiffs filed a FOIA request ("Request") seeking records concerning the FBI's eGuardian system from the Defendants Federal Bureau of Investigation ("FBI"), U.S. Department of Justice ("DOJ"), and National Security Agency ("NSA"). Plaintiffs requested expedited processing of the Request.

4.      The Defendants have failed to fulfill their obligation to make the requested information available in an "expedited" fashion. The DOJ and the NSA have not released a single document in response to the Request. Although the FBI issued a partial release of documents on April 27, 2011, it improperly withheld information from those documents. The FBI has also failed to provide any information subsequent to the first release although more than eighteen months have passed since the Request was filed.

5.      Plaintiffs are entitled to the records they seek. These records will significantly contribute to the public's understanding of how local, state, and federal authorities have interpreted the broad mandate of the eGuardian program, how they have used the potentially invasive "suspicious activity" reporting system, and whether effective safeguards are in place to protect Americans against unwarranted privacy invasions or discriminatory surveillance based on their race, ethnicity, national origin, religion, or protected beliefs or activities. Plaintiffs are also entitled to expedited processing of the Request because the ACLU is primarily engaged in disseminating information and urgently needs the requested information to inform the public about federal government activity, and because the information sought relates to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. Plaintiffs are further entitled to a waiver of

processing fees because the release of the requested records is in the public interest, and to a limitation of processing fees because the ACLU is a "news media" requester.

6.     Plaintiffs seek an injunction requiring Defendants to process the Request immediately and expeditiously, to conduct a thorough search for all records responsive to the Request, to release records that have been unlawfully withheld, and to release information that has been unlawfully redacted from released documents.  Plaintiffs also seek an order enjoining Defendants from assessing fees for the processing of the Request.

## Jurisdiction and Venue

7.     This Court has both subject matter jurisdiction of this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), (4)(B) and (6)(E)(iii).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.

8.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

9.     Plaintiff American Civil Liberties Union is a nationwide, non-profit, nonpartisan organization with more than 500,000 members dedicated to the constitutional principles of liberty and equality.  The ACLU is committed to ensuring that actions taken by the American government under the rubric of "national security" are consistent with the Constitution and laws, including international law.  The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in civil liberties and human rights matters.

10.     Plaintiff American Civil Liberties Union Foundation is a separate § 501(c)(3) organization headquartered in New York, New York that educates the public about civil liberties

and employs lawyers who provide legal representation free of charge in cases involving civil liberties.

11.     Defendant Federal Bureau of Investigation is a component of the U.S. Department of Justice and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The FBI is headquartered in Washington, D.C.

12.     Defendant Department of Justice is a Department of the Executive Branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The DOJ is headquartered in Washington, D.C.

13.     Defendant National Security Agency is a component of the U.S. Department of Defense and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The NSA is headquartered in Fort Meade, Maryland.

## Factual Allegations

14.     The public is increasingly concerned about the ways in which federal, state and local governments collect and use reports of Americans' "suspicious activity" and the ways in which nationwide programs for sharing such information may violate civil rights and civil liberties.  In January 2009, the FBI launched the eGuardian program to track and share information about potential terrorist threats and "suspicious activity" nationwide.  Through the eGuardian system, the FBI collects "Suspicious Activity Reports" or "SARs" from local, state, and federal law enforcement and intelligence agencies.  According to the FBI's own description of the program, "suspicious activity" that law enforcement officials across the country report, collect, and share includes "observed behavior that may be indicative of intelligence gathering or pre-operational planning related to terrorism, criminal, or other illicit intention."  This vague and

broad description may encompass activity as innocuous and commonplace as taking photographs of prominent buildings.

15.     The eGuardian system of tracking, analyzing, and disseminating widely Americans' "suspicious activity" raises grave privacy concerns.  Unless carefully implemented and closely monitored, it may encourage illegal and inappropriate profiling on the basis of race, ethnicity, national origin, religion and/or beliefs and activities protected by the First Amendment.

16.     Although eGuardian has been in effect since January 2009, the public has little information about how local, state, and federal authorities have interpreted the program's broad mandate and have used the potentially invasive "suspicious activity" reporting system. Americans remain unaware of the kinds of activity that may be deemed "suspicious"; how eGuardian information is used; whether effective safeguards are in place to protect Americans against unwarranted privacy invasions or discriminatory surveillance based on their race, ethnicity, national origin, religion, or protected beliefs or activities; and whether the eGuardian system has been abused.

17.     The public is increasingly concerned about the expansion of government surveillance powers and the concomitant collection and dissemination of information about innocent Americans in ways that violate civil rights and civil liberties.  Nationwide "suspicious activity" reporting and information-sharing programs like eGuardian—whether operated by the FBI or another federal agency—have inspired public concern since such programs were first introduced in 2006.  *See, e.g.*, Karen DeYoung, *GAO Faults Agencies' Sharing of Terror Data*, Wash. Post, Apr. 19, 2006; Karen DeYoung, *Group Will Sort Terrorism Alerts for Local Governments*, Wash. Post, Nov. 17, 2006; John Farmer Jr., Op-Ed., *How to Spot a Terrorist*, N.Y. Times, Sept., 27, 2010; Siobhan Gorman, *U.S. Seeks Terror Tips From States, Cities*, Wall

St. J., June 13, 2008; Spencer S. Hsu, *Napolitano Seeks New Recruit in Terror Fight: You*, Boston Globe, July 30, 2009; Eric Schmitt, *Surveillance Effort Draws Civil Liberties Concern*, N.Y. Times, Apr. 28, 2009; Mary Beth Sheridan & Spencer S. Hsu, *Localities Operate Intelligence Centers to Pool Terror Data*, Wash. Post, Dec. 31, 2006; Christine Simmons, *Report: Is Data Sharing Stopping Terrorists?*, Assoc. Press, July 22, 2008; *see also*, Ben Bain, *Counterterrorism Goes Local*, Fed. Computer Wk., Apr. 25, 2008; Ben Bain, *Standard Updated for Reporting Suspicious Activity*, Fed. Computer Wk., May 22, 2009.

18.     Indeed, government "threat assessment" and information sharing systems that were precursors to eGuardian have led to widespread abuses.  For example, the Pentagon's TALON system was used to monitor and improperly retain information about peaceful protest activity as potential "terrorist threats."  *See, e.g.*, Peter Spiegel, *Pentagon Wrongfully Retained Data, Review Finds*, L.A. Times, Apr. 6, 2006.  TALON was terminated in September 2007 after it was discovered that information on nearly four dozen anti-war meetings or protests was included in the system.  Lolita C. Baldor, *New Program Will Boost Military Base Security*, Assoc. Press, Oct. 6, 2010.

19.     eGuardian itself has been the subject of widespread media interest since it was announced in 2008.  *See, e.g.*, Carrie Johnson, *FBI Threat Tracking Improves, Report Says*, Wash. Post, Nov. 8, 2008; David Morgan, *Pentagon to Test Unclassified Alternative to Talon*, Reuters, Aug. 6, 2008.  Concerns that the use of eGuardian may lead to racial and religious profiling, discrimination, and the infringement of Americans' privacy rights have also generated widespread media attention.  *See, e.g.*, Dana Priest & William M. Arkin, *Monitoring America*, Wash. Post, Dec. 20, 2010 (noting with respect to eGuardian that "within the FBI and other intelligence agencies there is much debate about the effectiveness of the bottom-up SAR

approach, as well as concern over the privacy implications of retaining so much information on U.S. citizens and residents who have not been charged with anything"); Baldor, *supra* (reporting concern that eGuardian "opens the door" to law enforcement improperly targeting individuals out of racial, religious, or other bias); Devlin Barrett, *FBI Shares Threat-Tips with Local Police Agencies*, Assoc. Press, Jan. 13, 2009 (quoting ACLU policy counsel Michael German stating, "The concern [with eGuardian] is, what's being collected, who is it being shared with, and who is responsible for any action taken as a result. . . . If the federal government is creating this national system, it's their responsibility that only the proper and correct information is being put in."); *FBI Launches Tip-Sharing for Inauguration*, CBSNews.com, Feb. 11, 2009 (same).

20.    In December 2010, it was reported that some 890 state and local agencies had submitted 7,197 SARs for inclusion in eGuardian, but that only 103 SARs resulted in investigations.  Priest & Arkin, *supra*.  Nothing is known about how many of the 7,197 SARs were entered into eGuardian, what standards governed these decisions, how the information was or is being shared, or what protections guard against unwarranted privacy invasions or discriminatory surveillance based on subjects' race, ethnicity, national origin, and/or religion.

21.    In short, there is significant and increasing public concern that federal, state, and local governments are collecting, storing and disseminating protected information about Americans through eGuardian in ways that violate civil rights and civil liberties, but there is a dearth of publicly available facts.

## FOIA Request

22.    On March 1, 2010, the ACLU submitted a request for documents pertaining to the FBI's implementation of eGuardian to the designated FOIA offices of the FBI, DOJ, and NSA pursuant to the FOIA, 5 U.S.C. § 552, and its implementing regulations.

23. Plaintiffs' Request specifically sought the release of records created since January 1, 2006, relating to 1) the numbers of people and incidents entered into or reported to the eGuardian system; 2) final memoranda, policies, procedures, directives, guidance, legal analysis, and training materials pertaining to the collection and dissemination of information through eGuardian, and the government's compliance with privacy and anti-discrimination laws and federal regulations; 3) intra-agency correspondence or correspondence with local, state, or federal agencies regarding the implementation of, and/or problems and concerns associated with, the implementation of eGuardian; 4) evaluations, tests, analyses, and/or assessments of the implementation, effectiveness, and accuracy of, and problems with, the eGuardian system; 5) complaints about, investigations of, and/or disciplinary actions related to the misuse or abuse of the eGuardian system; 6) descriptions of the process and/or procedures individuals may use to find out what information about them is maintained in the eGuardian system and how to correct inaccuracies or errors; and 7) the financial and staffing resources required to operate eGuardian.

<u>Request for Expedited Processing</u>

24. Plaintiffs sought expedited processing of the Request on the grounds that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii). In addition, Plaintiffs sought expedited processing because the records sought relate to a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

25.     The ACLU is "primarily engaged in disseminating information" for the purposes of the FOIA.  Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public is a critical and substantial component of the ACLU's work and one of its primary activities.

26.     The Request seeks records that are urgently needed to inform the public about actual or alleged federal government activity.  They pertain to the scope and implementation of the FBI's nationwide, eGuardian monitoring and information-sharing system.  The records sought are urgently needed because this system is targeted toward a broad and vague category of "suspicious activity" and thereby implicates the privacy rights, civil rights and civil liberties of innocent Americans, but almost nothing is known about the program's implementation, the standards that guide or limit its use, and whether the system has been, or is being, abused.

27.     The requested records also relate to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity—questions that affect public confidence in the government's respect for the civil rights and civil liberties of its citizens.  As Plaintiffs' Request demonstrates, nationwide suspicious activity reporting and information-sharing programs like eGuardian—whether operated by the FBI or another federal agency—have been the subject of sustained media interest and public scrutiny since 2006.  Such interest has only increased since eGuardian was launched in January 2009.  The public is concerned that eGuardian will be used to violate the rights of innocent Americans in a manner similar to the abuse of the Pentagon's now terminated TALON program.

<u>Request for a Public Interest Fee Waiver</u>

28.     Plaintiffs sought a fee waiver on the ground that disclosure of the requested records is in the public interest because "it is likely to contribute significantly to public

understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  *See* 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.11(k)(1); 32 C.F.R. § 286.28(d)(1).

29.    Disclosure of the requested records will contribute significantly to the public's understanding of how the FBI uses the eGuardian system to track, monitor, analyze and disseminate Americans' "suspicious activity."

30.    Disclosure is not in the ACLU's commercial interest.  The ACLU summarizes, analyzes, explains and disseminates the information it gathers through the FOIA at no cost to the public.

<u>Request for a Limitation of Fees Based on News Media Requester Status</u>

31.    Plaintiffs also sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and that the records are not sought for commercial use.  *See* 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 28 C.F.R. § 16.11(d); 32 C.F.R. § 286.28(e)(7).

32.    The ACLU is a "news media" requester for the purposes of the FOIA because it gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.  The ACLU publishes electronic and paper newsletters, reports, books, "know your rights" publications, fact sheets, brochures, pamphlets, and other educational and informational materials.  The ACLU also maintains an extensive website and a widely read blog.  Through these and other channels, the ACLU routinely summarizes, explains, and disseminates information obtained through the FOIA.  The ACLU provides all of this information at no cost to the public.

**Government Agencies' Responses to the Request**

Federal Bureau of Investigation

33.     By letter dated April 2, 2010, the FBI acknowledged receipt of the Request and assigned it tracking number 1144958-000.

34.     By letter dated April 8, 2010, the FBI granted Plaintiffs' request for expedited processing on the basis that the Request shows an "urgency to inform the public about an actual or alleged federal government activity" and "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

35.     By letter dated April 19, 2010, the FBI agreed to waive fees for Plaintiffs' Request because "disclosure of the information sought in the [Request] will 'contribute significantly to public understanding of the operations or activities of the government.'"

36.     By letter dated April 27, 2011, David Hardy, Section Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI, released 48 pages in response to the Request.  Mr. Hardy stated that "226 page(s) were reviewed and 48 page(s) are being released," and determined that information was properly withheld from the documents under the following FOIA exemptions: 5 U.S.C. §§ 552(b)(5), (6), (7)(C) and (7)(E).  Mr. Hardy further indicated that "documents(s) were located which originated with, or contained information concerning other Government agenc(ies)" and that this information had been "referred to the [other government agencies] for review and direct response" to Plaintiffs.

37.     Despite having granted expedited processing to Plaintiffs' Request, Defendant FBI took a full year to release any responsive documents, well beyond the generally applicable twenty-day statutory deadline for processing standard, non-expedited FOIA requests, *see* 5 U.S.C. § 552(a)(6)(A)(i).

38.     On June 15, 2011, Plaintiffs timely appealed the FBI's withholding of information from the documents in the April 27, 2011 release, and its failure to timely respond to the Request, to make the requested information promptly available, and to refrain from improperly withholding documents.

39.     As of the date of this filing, the FBI has not produced any additional documents or informed Plaintiffs of an anticipated date for the completion of the processing of the Request.

40.     Plaintiffs have exhausted all applicable administrative remedies available with the FBI with respect to the Request and have received no further response from the FBI.

<u>Department of Justice</u>

41.     By letter dated August 3, 2010, Ginae E. Barnett, FOIA Specialist in the DOJ Office of Information Policy, stated that the FBI had referred one document, totaling eighteen pages, to the DOJ Office of Information Policy for processing and direct response to Plaintiffs on behalf of the Office of the Deputy Attorney General.  Ms. Barnett indicated that the DOJ Office of Information Policy needed to consult with another DOJ component prior to providing a response because the document "contains information of interest to another [DOJ] component."  Ms. Barnett further indicated that Plaintiffs would not incur fees for the processing of the referral.

42.      By letter dated February 2, 2011, Carmen L. Mallon, Chief of Staff of the DOJ Office of Information Policy, indicated that "upon further review by this Office, we have determined that the material referred by the FBI is not responsive to your request because it pertains to the Department's general privacy protection policy on information sharing and not specifically to the FBI's eGuardian program."  Ms. Mallon also "advised that the document, dated February 3, 2010, does not reference eGuardian in any way" and that Plaintiffs could "administratively appeal" the determination.

43.      Plaintiffs did not administratively appeal the determinations communicated by DOJ in the February 2, 2011 letter.

44.      Other than the letters dated August 3, 2010 and February 2, 2011, the DOJ has provided no response to Plaintiffs' Request.  DOJ has not acknowledged receipt of the Request, assigned it a tracking number, stated that it is processing the Request, or released any documents to Plaintiffs in response to the Request.

45.      Plaintiffs have exhausted all applicable administrative remedies available with the DOJ with respect to the Request.

<u>National Security Agency</u>

46.      By letter dated March 18, 2010, the NSA confirmed receipt of Plaintiffs' Request, assigned it Case Number 61043, and stated that it had begun to process the Request.  It further indicated that Plaintiffs' application for expedited processing had been denied.

47.      On May 14, 2010, Plaintiffs timely appealed the NSA's denial of expedited processing.

48.      By fax dated June 3, 2010, the NSA indicated that Plaintiffs' appeal was denied.

49.     Plaintiffs have exhausted all applicable administrative remedies available with the NSA with respect to the Request and have received no further response from the NSA.  NSA has not released any documents to Plaintiffs in response to the Request.

### Causes of Action

50.     Plaintiffs are entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because Defendants continue to improperly withhold and/or delay the processing of agency records in violation of the FOIA. Plaintiffs will also suffer irreparable injury from, and have no adequate legal remedy for, Defendants' withholding of, and prolonged delay in, production of government documents pertaining to the scope and implementation of the eGuardian program.

51.     Defendants' failure to release records responsive to Plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3), DOJ regulations, 28 C.F.R. § 16.1, and NSA regulations, 32 C.F.R. § 286.

52.     Defendants' failure to timely respond to Plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), DOJ regulations, 28 C.F.R. § 16.6(b), and NSA regulations, 32 C.F.R. § 286.4(d).

53.     Defendants' failure to make a reasonable effort to search for records responsive to the Request violates the FOIA, 5 U.S.C. § 552(a)(3)(C).

54.     Defendants' improper withholding of information, including information redacted from the FBI's April 27, 2011 release, violates the FOIA, 5 U.S.C. § 552(a)(4)(B).

55.     Defendants FBI and DOJ's failure to make promptly available the records sought by Plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and DOJ regulations, 28 C.F.R. § 16.6(b).

56.     Defendants DOJ and NSA's failure to grant Plaintiffs' request for expedited processing and to process Plaintiffs' request as soon as practicable violates the FOIA, 5 U.S.C. § 552(a)(6)(E), DOJ regulations, 28 C.F.R. § 16.5(d), and NSA regulations, 32 C.F.R. § 286.4(d)(3).

57.     Defendant NSA's failure to grant Plaintiffs' request for a public interest fee waiver violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and NSA regulations, 32 C.F.R. § 286.28(d).

58.     Defendant NSA's failure to grant Plaintiffs' request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii), and NSA regulations 32 C.F.R. § 286.28(e)(7).

**Requested Relief**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Order Defendants to conduct a thorough search for all responsive records;

B.     Order Defendants to immediately and expeditiously process all requested records, disclose the requested records in their entirety, and make copies available to Plaintiffs;

D.     Enjoin Defendant NSA from charging Plaintiffs fees for processing the Request;

E.     Enter a preliminary and permanent injunction ordering the relief requested herein against the Defendants;

F.      Award Plaintiffs their litigation costs and reasonable attorneys' fees incurred in

        this action; and

G.      Grant such other relief as the Court may deem just and proper.


                              Respectfully submitted,

                              _Nusrat Jahan Choudhury_

                              NUSRAT JAHAN CHOUDHURY (NC-2676)
                              HINA SHAMSI (HS-6908)
                              American Civil Liberties Union Foundation
                              125 Broad Street, 18th Floor
                              New York, NY 10004
                              Phone: (212) 519-7876
                              Fax: (212) 549-2654
                              nchoudhury@aclu.org
                              hshamsi@aclu.org

                              *Counsel for Plaintiffs*

Dated: September 23, 2011